### STEWART et, Appellees, v BORDEN et, Appellants.

Ohio Appeals, First District, Hamilton County.

No. 6674.   Decided July 1, 1946.

Stewart S. Cooper, Cincinnati, and W. Ray Skirvin, Cincinnati for appellees.

Weinberger & Grad, Cincinnati, for appellants.

### OPINION

PER CURIAM:

The defendants appeal on questions of law from a decree of the Court of Common Pleas of Hamilton county, adjudicating only the rights of the plaintiffs under a certain contract and dismissing, without prejudice, that part of the answer of defendants seeking affirmative relief under the same contract.

In such decree the trial court attempted to save the rights of the defendants by the following statement in the judgment entry:

"The court coming now to consider the answers of the defendants Sam B. Borden and Julius Payton, hereby dis-

misses without prejudice that part of their answers which sets up theirs claims for damages and the return of the $1500.00 paid to the plaintiffs."

In the petition, filed March 29, 1945, the plaintiffs allege: —that they entered into a certain contract with the defendant Sam B. Borden, acting for a corporation to be formed by him, by which they agreed to sell and the defendant Borden agreed to purchase, on behalf of such corporation, certain real estate; that Borden agreed to form a corporation to whom conveyance was to be made by plaintiffs, that Borden failed and refused to form such corporation, or to pay the purchase price or otherwise perform such contract, the defendant Borden claims such contract is in full force that in spite of such failure to perform such contract, and effect, thereby creating a cloud upon the plaintiffs' record title.

A copy of the contract is attached to the petition.

Plaintiffs pray the court shall declare that all rights of the defendant Borden under such contract have expired and terminated and that the plaintiffs "be found to be released and discharged from performing all and singular of the promises and obligations contained in said written agreement by them to be performed."

In the copy of the contract attached to the petition and made a part thereof appears the statement:

"It is understood that there is to be no liability on my part whatever under this offer, which is made solely on behalf of the corporation to be organized."

To this pleading, Borden filed an "Answer" admitting the execution of the contract and the terms thereof, and that he had not formed the corporation, and denied all other allegations.

The defendant Borden then proceeded to allege that he had advised plaintiffs' attorney that if the title and survey were satisfactory, he would take the title in the name of his wife, Mae Borden, to which plaintiffs agreed, that thereafter he called the attention of plaintiffs' attorney to certain defects in the title, and that plaintiffs' attorney stated such defects would be remedied, that plaintiffs have failed to cure such defects, and that by reason of the failure of the plaintiffs to cure such defects, the defendant is entitled to a return

of his deposit of $1500.00. The defendant further alleged that he was damaged by such failure of plaintiffs in the sum of $10,000.00 and prayed for judgment against plaintiffs in the sum of $11,500.00.

To the answer of Borden, the plaintiffs filed a reply, in which they state that they did not agree to accept Mae Borden as a party to such transaction, that the defendant is not damaged by postponement of the consummation of the sale, that any delay was acquiesced in by the defendant, and was waived by him. The reply contains also what is in effect a general denial.

Thereafter, on motion of the plaintiffs, one Julius Payton was made a party defendant.

The plaintiffs then filed a "Supplemental Petition for Declaratory Judgment" in which they "adopt and reiterate" the allegations of the original petition, and further allege that Julius Payton claims to be the real party in interest in the transaction involved, that they adopt all the allegations of their original petition against Payton and ask that he be required to set up any interest he may have in the subject matter of the litigation and again iterate the prayer of the original petition.

The defendant, Julius Payton, filed an "Answer", in which he admits the execution of the contract, copy of which is made part of the petition, and the terms thereof, and that the defendants have not yet formed such corporation. The defendant Payton then denies all other allegations and alleges that Borden in all the transactions involved was acting as his agent.

Payton then makes substantially the same allegations as are found in Borden's answer, and closes with a prayer for the same relief.

To this pleading, the plaintiffs filed a reply in which they denied that Borden was agent for Payton, that they had no knowledge of any such claim until counsel made a statement to this effect in the first hearing before the court. Plaintiffs deny that the defendant is damaged, that any delay in consummation of the sale was caused by the defendants and waived by them. The pleading otherwise is a general denial.

It will be noticed that the plaintiffs thus joined issue with the defendants, not only as far as their own pleadings were concerned, but also upon the cross-petitions of the defendants.

The bill of exceptions contains a certificate that it contains all the evidence submitted by the parties. It consists

largely of colloquies between counsel and the court. Some of these are important.

"THE COURT: Now it is agreed here by counsel for defendants that they refused and didn't care to go ahead with this purchase or the option.

MR. WEINBERGER: That isn't a correct statement, your Honor.

THE COURT: I think it is.

MR. WEINBERGER: I disagree with that.

THE COURT: Now, you say you are willing to go on, but you ought not to say that, that's because they have sold part of this property and you thought they couldn't go on.

MR. WEINBERGER: We understand they can't go on. The only question is whether we are entitled to get our deposit back or not.

THE COURT: That's what I thought, that the only question was about the $1500 so far as you are concerned. Now, what I was going to say was this, I don't see how you can get any question of that kind into this case. I think that from the agreement of counsel you have a right to have the option canceled so as to straighten your title out and leave that question open as to the $1500. That wouldn't affect the rights because that's a suit for money.

MR. WEINBERGER: But we filed a cross-petition in this case for the $1500. It all grows out of the same transaction. We have a right to set it up in this same case without a separate suit.

THE COURT: Well, it's far-fetched. I don't know why you made him a party defendant.

MR. SKIRVIN: Well, because, your Honor please, I couldn't get a judgment entry or a dismissal with prejudice against Mr. Borden from Judge Schwab. That's the reason I did it.

THE COURT: Well, go on with your evidence, put whatever evidence you want in. When I give a declaratory judgment you don't settle anything.

MR. SKIRVIN: You might settle the rights under the contract, that's all I want to settle.

THE COURT: Go ahead with the case."

And, again, in the cross-examination of Payton by plaintiffs:

"BY THE COURT:

Q. When they finally got the title all right then you didn't care to go ahead with it, is that it?

A. Your Honor, I couldn't get no fixtures.

Q. You may have had a good excuse but you dropped it?

A. I dropped it, yes.

Q. You dropped the option?

A. Yes.

Q. You dropped it, you wouldn't go ahead with it. You may have had good reasons, I don't care about that, the point is you didn't want to go ahead with this transaction?

A. That's right, because I couldn't get started and operate a farm and raise stuff what I had in mind. 207 acres I could raise a lot of stuff.

Q. You may have had good reasons but you did quit?

BY MR. SKIRVIN:

Q. That was in August, wasn't it, of last year?

A. That was in March when we were supposed to get title and we couldn't get a title, it wasn't clear.

Q. But I'm talking about when this conversation took place that you decided you couldn't get the machinery for it, that was about in August, wasn't it?

A. I couldn't tell you exactly.

Q. It was in the summer?

A. Whenever it was."

And, again, in the cross-examination of Borden by plaintiffs:

"Q. Were you not requesting in November, 1944, an extension in time of the option?

A. I knew nothing about the transaction after I had signed it, everything else was done between Mr. Payton and Mr. Weinberger.

Q. Now, do you recall your signing any proposed extension of the option about November 27?

THE COURT: Why go into that, this option they say is given up.

MR. SKIRVIN: All right.

THE COURT: He has nothing to do with it. Mr. Payton says it's his and he says it's his. He's just the agent he says.

MR. SKIRVIN: All right, if that's the Court's ruling. I know that Mr. Weinberger is trying to go back of that. If he does I will just reserve my right to call him back again."

And, again in the examination of Stewart Cooper, attorney for plaintiffs:

"THE COURT: Of course, I don't understand why you bother about that. I asked Mr. Payton and I asked Mr. Borden why this deal didn't go through. They said they didn't care to go through with it — that he didn't want to go through with it. He had good reasons maybe, but he gave up the thing.

He said that didn't he, Mr. Cooper?

THE WITNESS: I think so, your Honor.

MR. SKIRVIN: All right, cross-examine."

And, again:

"MR. WEINBERGER: And I want to take exception to the plaintiff making a motion at the conclusion of his testimony only before defendants have had any opportunity to present any testimony, either in answer to the petition, or on their cross-petition.

THE COURT: Well, put your men on. I asked Mr. Payton and I asked Mr. Borden, I asked them right here about the option and they said yes, we have given it up, we refused to go ahead with the property. He went to telling me his reasons, which were probably good, but they were personal. Now that's all I am deciding. They are asking me to forfeit the money to them and I am deciding in your favor that I have no such right of forfeit. There is no agreement that if they didn't go ahead they were to forfeit this, and I have kept in mind, I may be wrong, that they are liable for whatever the loss actually was to the Stewarts. If they didn't lose any $1500, I don't see any basis for them keeping the $1500. I am leaving that all open for you to bring a suit to recover it and then they will have to prove that they were damaged that much. If they weren't damaged that much they can't keep that whole $1500.

MR. WEINBERGER: We have several witnesses. Will the Court permit us to put on our testimony?

THE COURT: Yes, put on some testimony here. You heard me say to Mr. Stewart why are you going into that if they admit it. Have you got anything more? Put him on. Go ahead with it. I don't know what you are driving at.

MR. WEINBERGER: I have Mr. Anderson and I have the surveyor.

THE COURT: What about?

MR. WEINBERGER: To testify as to the correspondence

and to testify as to the fact that he endeavored to clear up this title and that he did not clear it up as requested. I have the surveyor to testify that the description—

THE COURT: Now, Mr. Weinberger, you are a good lawyer and you are a good thinker. You had a lot of delays but you agreed to them. You kept corresponding. You didn't call this off on that ground at all. Finally they got it all ready. You are familiar with all of that. And it finally came up to the time and at that time you said you didn't want it, you wouldn't go ahead with it.

MR. WEINBERGER: I am again asking the Court to permit us to proceed with our case and to put our witnesses on as we think necessary.

THE COURT: You may take your decree canceling this option and an order canceling it from the record and leaving all questions as to the $1500 or damages, all other questions are left open.

MR. WEINBERGER: I want to take exception to the ruling of the Court and to the Court's refusal to permit us to put on our case.

THE COURT: Put in the record what you want to prove.

MR. WEINBERGER: If the Court will permit me, but every time I try the Court interrupts.

THE COURT: You can state it in the record what I am not allowing you to put on."

From the foregoing, it would seem that the Court concluded that it was not required to consider anything but the petition and the defense thereto. In effect, this was an action in equity to quiet title. The decree of the trial court did far more than merely declare the rights of the parties under the contract. That decree cancelled the contract of record and abrogated its terms as far as plaintiffs' obligations involving the real estate were concerned. Such decree would render any later attempt to litigate the issues determined futile under the rule of res judicata. The reservation in favor of the defendants would only go to the extent of sustaining a claim of inconsistent elements in the decree.

Either the Court should have refused to enter any decree, on the ground that it would not terminate the controversy, as is provided in §12102-6 GC, or it should have proceeded to pass upon the claims of the defendants after permitting them to present evidence sustaining their cross-claims, which were permissible under the provisions of §§11315, 11317, 11319 GC.

The cross-claims of the defendants were made issues by the pleadings of the plaintiffs.

It is apparent the parties were willing to waive a jury and try their case to the court. The Court could have determined whether or not the defendants had any right to a return of their deposit or were entitled to damages.

Any question of the jurisdiction of the court over the persons of the plaintiffs upon the cross-petitions of the defendants is eliminated by the filing of replies of the plaintiffs.

It appearing that the rights of the defendants will be prejudiced by permitting the decree of the trial court to remain undisturbed, that the court refused to pass upon the defenses and claims of the defendants raised by the pleadings or permit the defendants to present evidence thereon, the decree of the trial court is reversed and the case remanded for a new trial upon the issues presented by all the pleadings.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ, concur.